14, 15.1, Dante Tyler v. DH Capital Mgmt Inc 4R, Knoxville, DC, 15.1, Versailles, New Orleans, NJ, 40.0 May it please the Court, I am Attorney James McKenzie here for the appellant, Dante Tyler. This is a case from the District Court of the Western District of Kentucky and involves some basic rules of civil procedure that are basic but yet very crucial. They are dispositive whether a claim that has brought a direct action in federal court brought pursuant to a counterclaim that was a lawsuit that was dismissed in state court by voluntary dismissal under Kentucky Rules Civil Procedure 41, which involves voluntarily dismissing an action by the plaintiff prior to service of an answer by the defendant. And that's exactly what happened in this case that the claim was dismissed voluntarily by DH Capital Mgmt. They filed the case on October 12 and dismissed it, filed a motion to dismiss on October 18 prior to the defendant having an answer. Am I right that what happens here is they file a suit and don't serve it, so your people don't really know about it. You file for bankruptcy sometime later, but you don't schedule this death, so they don't know about it. And then in October, apparently, wholly coincidentally, you get your discharge on the 4th, they serve on the 12th, they find out that you've been in bankruptcy, they say, oops, sorry, and they bring it back. Isn't it kind of no harm, no foul all around? It would be if our action had not been dismissed by the district court saying that it was a compulsory counterclaim that had to be brought in the state court action. And clearly, Mr. Tyler could not have brought the counterclaim because his claim had already been dismissed by the time that he filed his answer. Okay, let me step back. My first statement may have just been fireside equity, but your man was in bankruptcy. All of his assets should have been scheduled in the bankruptcy. To the extent that this claim has merit, why wouldn't that be property of the estate as well? And that that needs to be played out before we decide, before your man would have an individual right, it would have to be property of the estate and then either the estate would pursue it or the estate would abandon it. What's wrong with that? Well, first of all, he had no knowledge of the claim to begin with, so he couldn't have scheduled it. And the case law, I think, is fairly persuasive that if a claim is rooted in facts that have to do with a pre-petition filing, then that claim, obviously there would be knowledge of the facts and obviously it should be scheduled. But in this case, it actually, the claims under the Fair Debt Collection Practice Act that are being alleged are all rooted in the filing, the actual filing of the complaint that occurred. So it goes back to March. Excuse me. It relates back to March, but the service is when the claim occurred in October of the same year. But the charge could have been brought back when the case was filed, whether he was served or not, right? No, that's not our position, Your Honor. Our position is that if you take that, if that were the case, then it would cause, the potential is for debt collectors to actually file an action and then delay service for a year, which is the statute of limitation on fair debt collection action claims, and then actually serve afterwards and that would extinguish the claim. But that's for statute of limitations grounds as opposed to for calling it pre-petition or for your ability. That is, if for whatever reason, you know, small town, you've just been watching the docket and you said, hey, they filed this asking for 21%, that's a violation. In principle, you could have sued at that point. But if the claimant has no knowledge, and I think that's what the case law talks about, that even the Ninth Circuit, which was really the only holdout, which was the only holdout saying that it was one service, or excuse me, upon filing. Most of the circuits, if not all, that have spoken on it have said that it is upon actual service that the claim accrues. And even the Ninth Circuit has backed off on that in a recent case that was at least one of the district courts there. It says that if you have notice, then actual notice, then the claim could accrue, but not so much filing. And so that's our position is that it doesn't serve any purpose under the Fair Debt Act to make it upon filing if the potential claim, the claimant has no knowledge of it, therefore could not possibly bring it. And it would potentially encourage debt collectors, and as I say, I have a case right now that was filed in 2010, served in late 2012. And any debt collection action claims would be extinguished if that were the holding. But was this debt discharged by the bankruptcy proceeding? Yes, it was. But obviously did not have notice of the lawsuit, so that was never listed as a potential claim of the bankruptcy estate. And was the debt in fact scheduled and thus discharged? It was, Your Honor, yes. I was not the bankruptcy counsel, but I believe that is accurate. Well, I have to ask the other side, because if it was properly scheduled and so on, wouldn't notice have been given and they would have known that it was in bankruptcy back before any of this mess happened? Essentially so, yes. All right, well, here's what they have to say. It was scheduled under the bank's name and not under the eventual purchase of the debt, right? That would be correct, Your Honor. Yes, it would be the original credit. It's still the same debt. It is the same debt, but the original credit would have been listed. Exactly. So the question… What kind of damages does a person get for a thing like this when the debt's discharged? Under the Fair Debt Act, it's $1,000 statutory damages. Just get a liquidated amount. Exactly, under the statute. And I have failed to mention I have reserved four minutes, and I see that I'm under four. So I'm going to, at this point, if you have any further questions, I'll ask or answer them. Okay. If you have any other things… No. Thank you. Sergeant, go ahead. David, did you… No. It's my pleasure. Thank you. I'm John Taro from May Potter and May Potter. I represent the Apolee, in this matter, DH Capital Management, Inc. DH Capital's position, as you might surmise, is that the dismissal is proper in this case, and two bases for that position exist. First, this was a compulsory counterclaim. The FDCPA claims that were brought in the federal court should have been brought in state court action to collect the debt in the first instance. Can you file a counterclaim if the case is dismissed? Well, in this instance, Judge, the case wasn't dismissed until October the 26th. An answer was filed on October the 20th. No counterclaim was appended. Did they get dismissed just by rule of law? Not necessarily in this case pursuant to CR 4101. Yes, you can notice a dismissal, and that's self-operative. This did not happen here. In this case, Judge, what we did was we filed a notice to dismiss and appended to it a request for the entry of an order asking the court to dismiss the case from the docket. The reason we do that, Your Honor, is because in instances like this, whenever half of the service time and response time have passed, we file a request for an order from the court in the case there's a possibility that the defendant has filed an answer to our complaint. In that instance, we don't want the court to have confusion regarding whether or not there's jurisdiction or what we're moving under. Well, it's nice of you to do that, but you did move under the voluntary dismissal, didn't you? I mean, you said we voluntarily dismissed. Well, I don't believe, yes, you're correct, Judge. If I was correct, which I think he is on the law, then it happened right then. But I believe if you look at the rule that that dismissal would be operative as to claims that were asserted by my client, not necessarily operative as to any other claims. In fact, Rule 1309 of the Conducting Rules of Civil Procedure and Section 2 of CR 4101 provide for the preservation of a counterclaim if it is presented by a defendant in response to a complaint. And that's what didn't happen here. I don't think that there's any dispute, Your Honors, regarding whether or not this is a compulsory counterclaim. All of the issues presented by this federal case arise from the allegations and the claims that are asserted in the complaint. There's no separate conduct here that would lead to an FDCPA violation. And I think that that is also important, not with regard to the dismissal on compulsory counterclaim grounds. It's also important with regard to dismissal from a bankruptcy perspective. Our position, of course, is that this was an asset that belonged to the estate. Section 51A of the Bankruptcy Code provides for the schedule or the disclosure of all equitable and legal interests that a debtor possesses at the commencement of an action. Now, you raised a point earlier, an argument regarding whether or not the defendant's lack of knowledge about the existence of the claim is significant. And our position is that in this case, that would not be. The Enright Parker case, Hall v. Mueller, deals with the issue of whether or not an asset legal claim is considered to be a part of the property of the estate. Hall v. Parker or Hall v. Mueller indicates that as long as the conduct which creates the claim is rooted in pre-existing conduct, which existed prior to the time of the bankruptcy, that it is an asset. Now, there's been a question raised in the briefing, and I can see that you'll get to in a minute here, Judge, about whether or not there is a continuing duty to disclose the existence of an asset later discovered. And I think that that's very clear in the Bankruptcy Code, Section 521A.7. It's clearly stated that the bankrupt must disclose any interest in property that is acquired after the commencement of a case. Additionally, this court has recognized in the case... So from a bankruptcy point of view, even if you didn't date it back to March, you would date it to the time of the service, but that didn't happen until after the discharge, right? Well, we disagree with that position, and the reason that we disagree with that position, Judge, is that you pointed out in the prior argument that that line of cases, Johnson v. Ritter, Ruth v. Unifine, Noss v. Sullivan, all of those cases are statute of limitations cases, and they deal with the issue of when a cause of action approves for the purpose of running a statute of limitation. A notice in discovery rule makes sense in that scenario because obviously a statute of limitation should not begin to run until the debtor is aware of the existence of the relevant... Let me take you back to a compulsory counterclaim point, because this is like choosing up on the baseball bat the way we used to do as kids at Thanksgiving. When you filed the voluntary dismissal, at that point they were under no obligation to do anything, right? They didn't have to answer in that there was a time for answering, but they didn't have to, so in a sense their answer that did not contain the compulsory counterclaim was wholly gratuitous. Normally a compulsory counterclaim rule is because something's going to happen ongoing, and we want to get the counterclaim in. Is that a fair reading? Well, I disagree that the notification in this case was entirely a notice of dismissal because it did request a further action by the court and dismissal from the trial court's docket. The state trial court docket did not occur until October the 20th, 26th, excuse me. Okay, so we do have a dispute here on the effect of a voluntary dismissal motion prior to answer. When Tyler filed his answer, what did he claim by way of an answer? Did he have a defense? Did he say that he owed the money? I mean, what was the nature of the answer that he filed on the 20th of October? General defenses were raised, Your Honor. Significantly, he did not disclose the existence of the bankruptcy, although CR 803 requires the disclosure of bankruptcy as an affirmative defense. That didn't happen in this case. He just denied he owed the money? He did deny that he owed the money, I believe, Your Honor. But no affirmative defenses? The affirmative defenses were the standard affirmative defenses that you see and the pleadings that are filed every day in state debt actions to collect debt. Well, of course, if that claim belonged to the trustee, he didn't have any business, the plaintiff didn't have any business answering anyway, right? That would be true, and it's our position that it did. And it's significant, Judge, that he received his discharge on October the 4th. On October the 12th, he received notification of existence of this lawsuit. Sure took a long time to get him served. Was he out of the country at the point of that? It must not have been if he was filed for bankruptcy. It typically happens. I'm not sure why the service took so long. In this instance, Judge, a lot of times we just have a hard time finding people, and that may be what happened here. I do think that we were frustrated. So you don't look for them on court dockets, for example? I do look for them, but whenever the debt is scheduled as being owned by the original creditor, our client, DH Capital, would not necessarily receive notification of the existence of the bankruptcy, and I think that's a salient point that I don't want to be involved in. No, that's what I said. But checking dockets, that is presumably, especially nowadays, electronics, you're looking for Mr. Dion T. Taylor. It's not like John Johnson. I can tell you that that scrub would have been done initially when the lawsuit was filed in March of 2011, but it isn't necessarily done or always done at service of process or later steps. I personally do check and scrub whenever I file a motion for summary judgment or dispositive relief, but unless I'm about to do something significant that affects the rights of the defendant, well, usually I don't do it, and you usually don't. Getting back to the disclosure issue, because I think this is significant, I cited to you Section 521A.7, which requires continuing disclosure. Additionally, this court has held in the case of White v. Wyndham Vacation Ownership, Inc., that there is a continuing duty to disclose the existence of a claim. Now, that continuing duty, he got his discharge on October 4th. If there's a continuing duty, it would only have been triggered when you served it on October 12th, right? I mean, in the sense that if he should have known back in March, he should have known back in March, but if you get past March and say we're looking at a continuing duty, nothing happened to give him any indication that he would have a claim until October 12th, right? That's correct, Judge. Okay, so under your analysis then, he should have gone back to bankruptcy court and said, even though you have given me a discharge, I just found out about this potential asset. Absolutely. And this is particularly significant in an instance like this, Judge, where we've got eight days since the date that his bankruptcy was closed and he received a discharge of his indebtedness. We've got five months since he filed his petition in June of 2011. We don't have a situation like we do in the case, Hines v. Signet Insurance Company, which is cited in the reply brief in which we've got conduct said to create a claim years after the bankruptcy is closed. You'll recall in that case, we had a situation in which the bad faith claims were predicated upon refusal by the insurance company to pay benefits that were due compensation award ten years after the bankruptcy was closed. Additionally, I want to point out that it's extremely simple to reopen a claim in order to administer the assets of the state. Section 350B of the Bankruptcy Codes allows for reopening to administer assets and record relief to the debtor. In this instance, again, we have a claim that the debtor is aware of within eight days after the closure of the bankruptcy. The fact that he should have reopened, is that an independent evil or is that simply an argument, a strong sign that it's property of the estate? In other words, his failure to comply with his continuing duty, does that affirmatively harm him in some way or is it simply a piece of evidence? A strong piece of evidence that it's the property of the estate because we know how to do it. I think it's both. I think it's evidence that the debtor didn't do what he should have done in order to ensure that he had the right to pursue this claim. My question has always been throughout this, why wouldn't you? Because if you're concerned about whether or not you have a right to proceed, in the first instance you should go before the bankruptcy court and have a determination made regarding whether or not this is an asset and you have a right to pursue the claim. In some instances, as you may well be aware, the court and the trustee will allow the claim to go forward with the debtor's counsel to represent the estate itself. I think that the court's holding in the Wyndham case makes it clear that the debtor has a duty to reopen and section 350B provides a procedural mechanism. So the practical matter from your side as the defendant, obviously you'd like to win on the compulsory counterclaim point because then you're free and clear. If we rule on the property of the estate point, it may make a difference on their side, but it, at least in the first instance, doesn't make a difference on your side because you've got to defend against somebody, either individually or the estate. We're moving for dismissal, we're requesting dismissal, and certainly a lack of standing at this juncture or any other would provide a basis for the decision to be made. I'm just asking you as a practical matter, if we went on this second ground, it gets you out of this suit, but it doesn't get you off the hook. From their side, if we go on that ground, it may make a difference in terms of whether it's pursued individually or pursued by the estate. Is that fair? I don't know if that's true. And the reason I say that, Judge, is it relates to an issue not necessarily raised in the briefs and not before the trial court. There may be an instance here in which there's judicial estoppel. If the debtor took a position before the bankruptcy court that is inconsistent with the position he takes later in his district court filings, that is, that there is a claim to pursue that belongs to him, and in certain instances the court has recognized the existence of a defense based upon estoppel. So that's where your, quote, harm, the failure to update the schedule or to exercise the continuing duty you think might create a judicial estoppel. Right. But at least that would be on later litigation. Yes, sir. Okay. All right, what else? I believe that's all I have. Thank you for listening to me, and I'll question back later. Okay, thank you. Mr. McKenzie, you have your time for rebuttal. Your Honor, if I can just make two points, and they're very important points. First, the claim that the federal action that was brought by Mr. Tyler was based upon the allegations in the complaint. He did not have any notice of those allegations until he was served. So he could not possibly have included anything in his bankruptcy estate, and those claims didn't even exist until the complaint was filed, and we say served. If you accept our argument that when he served, that's when his claims accrued, then he could not possibly, those claims arise out of the very lawsuit they filed, demanding usurious interest, demanding retroactive interest, and he could not possibly have given, those claims didn't exist to be a part of the bankruptcy estate, and if you accept that when he served, that's when his claim accrued. Secondly, what about the quote continuing duty, that regardless of what happened to them, when they accrued by the 12th, they've accrued, and am I not right that it is? They arise out of a complaint. They arise out of the very action that he got served with. Right. It's based on what the action. I understand, but what I'm saying is, isn't it correct that even though you've gotten your discharge, if a new asset comes up, you are supposed to go back to court? It was rooted in the debt itself, in the contract between the original creditor and Mr. Tyler. I could see at least an argument on that side, but in this case, it has nothing to do with the original debt. There's no logical connection whatsoever. The claim arose when they filed the complaint, making illegal demands under the Fair Debt Collection Act, attempting to collect the debt in an improper method, is our allegation, based on that complaint. When he got served with that, he got notice of it, that is when we believe the claim accrued, and it had nothing to do. Okay, so let me analogize here. We have an argument that on the one side, if there's a piece of property that you really own, but you don't know about it, and you learn about it afterwards, after the discharge, you should go back to court and tell them about it, right? Yes. On the other hand, if after the discharge, you're hit by a bus, then you don't have to tell them, because it's nothing about the estate, it's about you. Exactly. So at least if we focus that narrowly, we have to decide, is this more like the piece of land in Brazil, or is it more like being hit by a bus afterwards? Is that fair? That's fair. Okay. I would point the court to a case that I believe is analogous. It's not directly on point, it's a TILA action, Root v. Unifund CCR Partners. It's a Sixth Circuit case, 604 F. 3rd, 908, 2010. And in that case, the court said, because they were not rooted in the same facts, the TILA claim was not... Actually, I think I just gave you the wrong site, but I will get that to you in just a moment. But the last point I want to make, before I run out of time, is that under Kentucky law, under Rule 41, the court actually loses jurisdiction upon the filing of the notice of voluntary dismissal. The court loses jurisdiction, and the case is dismissed as a matter of law. The court's permission is not needed, and that is an operation of law. It couldn't consider the counterclaim anyway, you're saying. Exactly. If you had filed a counterclaim, they would probably be relying on that interpretation, because then they'd say, hey, there's nothing to counterclaim against. I'm sorry, go ahead. When the initial bankruptcy petition was filed, was the debt to DHC that's discussed, was that listed as a debt, as a bankrupt? It was listed, I believe, Your Honor, it was listed in the name of the original creditor. The original creditor on account, not in the name of DHC. So DHC, was the debt assigned to them? The debt was assigned, and they're a debt buyer, and they had purchased the debt unbeknownst to my client, and would not have known to list it in their name because they did not know of the assignment. So under the rules and laws, was it Chase's obligation to inform them, or is that just a private matter between the two parties? Between the two of them. Yeah, it was a private matter. Okay, can you do better on the case you were trying to tell us? The name is Root? No, I'm sorry. Strike that if you would. It is Maddox v. Kentucky Finance Company Insurance, 736 F. 2nd, 380, 6th Circuit, 1984. I'll bet a TLA action was permissive, not compulsory. We can look it up now. Okay, thank you counsel. The case will be submitted, and the clerk may comment.